UNITED STATES of America, Plaintiff,

v.

Steven BOFFMAN and Ricky
Cook, Defendants.

No. CR–2–89–175.

United States District Court,
S.D. Ohio, E.D.

June 4, 1990.

Bradley Barbin, for plaintiff.

Rich Cline, for defendants.

ORDER

GEORGE C. SMITH, District Judge.

This matter is before the Court upon Defendants' Motion to Suppress Evidence pursuant to Rule 12(b)(3), Fed.R.Crim.P., filed on April 18, 1990. Defendants argue that the evidence to be used at trial should be suppressed because the evidence was seized via an unlawful search and seizure.

Rule 12(b)(3) of the Federal Rules of Criminal Procedure provides as follows:

Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the judge. The following must be raised prior to trial:

\* \* \* \* \* \*

(3) Motions to suppress evidence;

Defendants' motion lists five violations of the defendants' rights. The first is that the search warrant was unconstitutional on its face in that it was not supported by probable cause, was based on stale information, did not particularly describe the items to be seized and was a general search warrant. The second basis for suppression is that the warrant did not have an affidavit attached at the time of the search. The third basis is that the agents conducted a general, exploratory search, in violation of the terms of the warrant and the Fourth Amendment. The fourth expressed ground for suppression was that the search went beyond the scope of the warrant. And, the final basis for suppression is that the warrant was obtained and executed by the government in a manner which violated defendants' right to process of law.

Subsequent to the filing of the motion a hearing was held with all parties present. The May 2, 1990, hearing provided the government with the opportunity to have Officer DeVault, one of the officers present when the original warrantless search occurred, testify as to the surrounding facts. On May 14, 1990, the government filed a consolidated response to the

defendants' pretrial motions that included a response to the suppression motion. Defendants jointly replied to the government's response to the motion to suppress evidence. Although the defendants raise five separate issues upon which they base suppression, for purposes of this Order the Court need only address two issues. First, whether the Columbus Police Department conducted an illegal search. And second, whether evidence pursuant to a warranted search should be suppressed if the Court concludes the warrant's underlying probable cause came as a result of an illegal search.

### FACTS

On September 23, 1988, the Columbus Police Department received an anonymous telephone call that essentially provided that there was a person at 3251 East 12th Avenue with "a gun threatening". The anonymous caller did not provide a description of the person possessing the gun, the type of gun, or any other additional information. The Columbus Police Department Dispatcher sent a radio transmission to Columbus Police Officer DeVault while he was on patrol. To the best of Officer DeVault's recollection the dispatcher stated that "a person was at [3251 East 12th Avenue] with a gun threatening". The officer did not recall whether the dispatcher provided the sex or race of the suspect. No other information was provided to Officer DeVault or the other officers that were dispatched to the East 12th Avenue residence.

Officer DeVault testified that upon arriving at the scene he was met there by Sergeant Mathias. At the time of arrival Officer DeVault observed three black males exit the front door of the home. According to the testimony the three individuals promptly reentered the residence. Although it was not made clear at the hearing, the Court gleaned from the testimony that the individuals quickly reentered the front door of the home once they saw the officers. Much was heard at the hearing as to the three individuals' movement back into the home and their rate of move-

ment. The government has referred to it as "a hostile or dangerous movement on the part of the inhabitants", the officer described the action as "running back into the house" and the defendants' joint reply simply provides that the three individuals "went back into the house." In any event, all parties and witnesses seem to agree that the individuals reentered the house. The Court can only assume that there was some haste in their movement inasmuch as it prompted Officer DeVault to "run" to the rear of the house. As the officer had suspected, three individuals quickly exited the back door. The officer yelled, "stop, halt", at which time the first individual stopped in his tracks while the other two reentered the home. At that time the officer was standing on the other side of a fence in a neighboring yard. Officer DeVault testified that the individual that was stopped exiting the rear door was turned over to another officer and escorted around to the front of the home. All total, Officer DeVault testified, the activities in the back yard took less than five minutes.

Officer DeVault joined Sergeant Mathias and Officer Minnix at the front door of the house. At the hearing he testified that the interior front door of the home was open, while the screen door was closed. Officer DeVault further testified that Sergeant Mathias opened the screen door and entered the house. The record is devoid of any testimony as to whether the officers knocked on the door or requested admission. The Court will reasonably assume that the officers simply let themselves in.

Once inside the home the officers instructed four black males to "assume the position" against the living room wall at which time a *Terry*[1] search was performed. While the pat-down search was being performed Officer DeVault noticed, in plain view, a white powdery substance and a triple-beam scale sitting on the counter in the adjacent kitchen. The counter was clearly in view from the living room. The officer, believing the substance to be cocaine asked the owner of the residence, one of the four individuals detained in the

1. 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889     (1968).

living room and a defendant in the instant matter, Mr. Steven Boffman, whether he would consent to the search of the premises. After consulting his legal counsel by telephone Mr. Boffman refused to give his consent. Therefore, the officers obtained a search warrant from Franklin County Municipal Court Judge Thomas V. Martin. The probable cause for the warrant was provided by virtue of the officers' viewing the white powdery substance in the kitchen of the home. A search was executed on the warrant; the white powder was tested and determined to be cocaine; and Defendants Boffman and Cook were arrested and charged with possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), coupled with other charges.

The Defendants' argument, with relation to the instant motion to suppress, is that the original warrantless search of the premises by the police was illegal. Clearly the original entrance of the home constituted a warrantless search of the premises; this fact does not seem to be in contention. Therefore, the Court must turn its attention to whether the warrantless search was validly performed.

It has long been held that a warrant is not necessary for a search incident to a valid arrest, see, e.g., Weeks v. U.S., 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); Marron v. U.S., 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927); and Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Furthermore, the search may be performed if there is valid consent to the search, Schneckloth v. Bustamonte,

412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). However, neither of these exceptions to a warrantless search is available in the instant matter. In light of the fact that the search in this case was not incident to a valid arrest nor was there consent to the search, this Court is mindful that the warrant requirement of the Fourth Amendment is "subject only to a few specifically established and well-delineated exceptions." [2] Katz v. U.S., 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

The government, in its memorandum contra, contends that the police conducted a legitimate limited search of the residence incident to a "shots fired" anonymous call coupled with "hostile and dangerous movements on the part of the inhabitants". The government's argument cites to United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), as authority for the officers' entrance into the residence. Presumably, by citing Leon, the argument the government is making is that the officers acted in "good faith", therefore, the search was legitimate. The issues of the Leon "good faith" exception and any argument that exigent circumstances existed to permit the warrantless search will be dealt with seriatim.

Leon was decided in 1984 and at the time it was decided it was heralded by law enforcement officials as a long needed step toward adopting a good-faith exception to the exclusionary rule [3]. The narrow holding of the Supreme Court was fact specific and provided that evidence obtained in violation of the Fourth Amendment by offi-

---

**2.** Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (stop and frisk for weapons); Colonnade Catering Corp. v. United States, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1967) (regulatory inspection of premises of an establishment serving alcoholic beverages); Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (exigent circumstances of hot pursuit of an armed criminal suspect); Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) (search incident to a lawful arrest); United States v. Newell, 506 F.2d 401 (5th Cir.1975) (border searches for contraband and illegal aliens); United States v. Skipwith, 482 F.2d 1272, 1275 (5th Cir.1973); United States v. Moreno, 475 F.2d 44 (5th Cir.1973), cert. denied, 414 U.S. 840, 94 S.Ct. 94, 38 L.Ed.2d 76 (1973) (airport search for weapons and explosives); Down-

ing v. Kunzig, 454 F.2d 1230 (6th Cir.1972) (searching of briefcases and purses upon entering federal courthouse); Robbins v. California, 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981) (search of automobile given probable cause to believe car contains evidence coupled with exigency arising out of the imminent or likely disappearance of the automobile).

**3.** The commonplace federal court practice to exclude illegally obtained evidence from being admissible at trial. See, e.g., Weeks v. U.S., 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); Jones v. U.S., 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958); Elkins v. U.S., 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960).

cers acting in objectively reasonable reliance on a search warrant issued by a neutral and detached magistrate need not be excluded. *Id.* at 913, 104 S.Ct. at 3415. The rationale for the *Leon* decision was threefold. The Court reasoned as follows:

> First, the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates. Second, there exists no evidence suggesting that judges and magistrates are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these factors requires application of the extreme sanction of exclusion. Third, and most important, we discern no basis, and are offered none, for believing that exclusion of evidence seized pursuant to a warrant will have a significant deterrent effect on the issuing judge or magistrate.

*Id.* at 916, 104 S.Ct. at 3417. Clearly the rationale set forth by the Court is not applicable in the instant matter. Justice White's opinion goes to great extents to declare that the underlying purpose of the exclusionary rule, to deter police misconduct, is not applicable when it is the judiciary that is in error in issuing the warrant and not the officer in executing it.[4] *Leon* is simply misplaced in the instant matter. The holding in *Leon* does not modify the exclusionary rule in cases in which the police have acted without a warrant. 2 Wright, *Federal Practice and Procedure* § 408 (2nd ed. 1982 & Supp.1990). Therefore, the government's argument that the officers' warrantless search could be legitimized based on *Leon* 's "good-faith" exception is clearly misplaced and fails to save the evidence seized in this case from the exclusionary rule. Thus, only an exigent

circumstances argument is available to legitimize the warrantless search.

As previously eluded to, exigent circumstances are fact sensitive and scarce. In *Arkansas v. Sanders*, 442 U.S. 753, 759–760, 99 S.Ct. 2586, 2590–2591, 61 L.Ed.2d 235 (1979), the Supreme Court wrote that " * * * there are some exceptions to the warrant requirement. These have been established where it was concluded that the public interest required some flexibility in the application of the general rule that a valid warrant is a prerequisite for a search." Most of the incidents where exigent circumstances exist are provided in footnote 2. *Arkansas* further provides, " * * * Thus, a few 'jealously and carefully drawn'[5] exceptions provide for those cases where the societal costs of obtaining a warrant, such as danger to law officers or the risk of loss or destruction of evidence, outweigh the reasons for prior recourse to a neutral magistrate." *Id.* 442 U.S. at 760, 99 S.Ct. at 2591.

The government failed in it's memorandum contra to enumerate precisely what exigent circumstances existed to permit the search. In reviewing the facts, the only plausible yet unpersuasive argument is that the officers felt some fear for their safety and thus a limited protective search was in order.[6]

■ Based on the facts provided by Officer DeVault at the May 2, 1990 hearing, the police were provided with a very brief and vague anonymous tip. Upon arriving at the address provided by the tip the officers observed the three individuals exit the house, sight the officers, then promptly reenter the house. There is no doubt that the individuals' behavior was suspicious,

---

4. "The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused. Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force." *Michigan v.*

*Tucker,* 417 U.S. 433, 447, 94 S.Ct. 2357, 2365, 41 L.Ed.2d 182 (1974), and reiterated in *United States v. Peltier,* 422 U.S. 531, 539, 95 S.Ct. 2313, 2318, 45 L.Ed.2d 374 (1975).

5. *See, Jones v. U.S.,* 357 U.S. 493, 499, 78 S.Ct. 1253, 1257, 2 L.Ed.2d 1514 (1959) (provides original quotation).

6. To get to such an argument it would require the broadening of the Supreme Court's recent holding in *Maryland v. Buie,* —— U.S. ——, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990).

but, it certainly was not illegal and it did nothing to corroborate the information provided by the anonymous tip. Without information to corroborate with the anonymous caller's allegations there was no way of determining the truth or veracity of the statements regarding a "man with a gun threatening". Therefore, without more, the tip and the actions of the three individuals did not and could not give rise to probable cause to search the premises. At no time did any of the officers see or hear anything that this Court could reasonably find verified the statement offered by the telephone call.

Arguably, the search could have been appropriate if the purpose was to detain suspects, however, Officer DeVault testified that he effectively sealed off the back door of the home when he stopped one individual that tried to leave and drove two others back into the home. The house was surrounded and no route was available for the suspects to flee. Since all escape routes were effectively blocked, the officers' only possible fear was that the suspects could barricade themselves into the home.

In the recent Supreme Court case of *Minnesota v. Olson*, —— U.S. ——, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990), the police suspected Olson of being the driver of the getaway car used in a robbery-murder. After recovering the murder weapon and arresting the suspected murderer, the police surrounded the home of two women with whom they believed Olson had been staying. When police telephoned the home and told one of the women that Olson should come out, a male voice was heard saying "tell them I left." Without seeking permission and with weapons drawn, they entered the home, found Olson hiding in a closet and arrested him. Shortly thereafter, he made an inculpatory statement, which the trial court refused to suppress. He was convicted of murder, armed robbery, and assault. The Supreme Court, in an opinion by Justice White reversed the conviction holding that the arrest violated Olson's Fourth Amendment rights. In so holding the Court provided that there were no exigent circumstances justifying the

warrantless entry: An entry may be justified by hot pursuit of a fleeing felon, the imminent destruction of evidence, the need to prevent a suspect's escape, or the risk of danger to the police or others; but, in the absence of hot pursuit, there must be at least probable cause to believe that one or more of the other factors were present and, in assessing the risk of danger, the gravity of the crime and likelihood that the suspect is armed should be considered. *Id.* at ——, 110 S.Ct. at 1690.

In this matter, as in *Olson*, the officers had the home surrounded. In examining the potential for exigent circumstance the Court reviewed the hot pursuit argument first since it does not require a finding of probable cause. Clearly, the facts as provided by Officer DeVault's testimony do not reflect that the officers were in hot pursuit of the suspects. Thus, in order for the Court to find that exigent circumstances existed to legitimize the warrantless entrance, the Court must find that probable cause existed to believe that one or more of the other factors, destruction of evidence, preventing a suspect's escape, or the risk of danger to the officers or others, existed to legitimize the search.

■ The only evidence before this Court upon which it can determine that probable cause existed is the anonymous telephone call, coupled with the behavior of the individuals when the police officers arrived at the house. When law enforcement officers corroborate the details of an anonymous informant's tip, the tip can give rise to a reasonable articulable suspicion. *United States v. Rodriguez*, 835 F.2d 1090, 1092 (5th Cir.1988). However, in this matter the officers were not able to corroborate even a single fact provided by the caller. Although the observation of innocent behavior can be sufficient to demonstrate the reliability of a tip, and seemingly innocent activity becomes suspicious in light of the initial tip, *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the "totality of the circumstances" approach still fails to provide sufficient evidence to give rise to probable cause. Without probable cause the remaining exigent circum-

stances arguments fail. In applying the above standards the Court cannot conclude that exigent circumstances existed to justify the officers' warrantless entry. Therefore, the Court hereby finds that the search conducted by the Columbus Police Department was illegal. In so finding, the Court must further conclude that the subsequent warrant obtained by the officers from the Municipal Court was tainted, and all evidence seized pursuant to said warrant must be suppressed.

Therefore, upon due consideration, the motion of Defendants to suppress the evidence seized is hereby GRANTED.

IT IS SO ORDERED.