**UNITED STATES of America, Plaintiff,**

**v.**

**Prince Dewitt WALL, Defendant.**

**Crim. No. 92–80156.**

United States District Court,
E.D. Michigan, S.D.

Dec. 1, 1992.

Stephen Markman, U.S. Atty. by Charles F. Holman, III, Detroit, MI, for plaintiff.

Miriam L. Siefer, Federal Defender Office, Detroit, MI, for defendant.

## ORDER ACCEPTING MAGISTRATE JUDGE MORGAN'S OCTOBER 9, 1992 REPORT AND RECOMMENDATION

GADOLA, District Judge.

The court, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, 28 U.S.C. § 636(b)(1)(B), and LR 72.1(d)(2) (E.D.Mich. Jan. 1, 1992), has reviewed the magistrate judge's October 9, 1992 report and recommendation. There were no objections filed thereto. After conducting a *de novo* review, the court accepts the magistrate judge's report and recommendation as the court's findings and conclusions.

NOW, THEREFORE, IT IS HEREBY ORDERED that the magistrate judge's October 9, 1992 report and recommendation is ADOPTED.

IT IS FURTHER ORDERED that defendant's motion to suppress evidence found during a warrantless search of his vehicle by ATF agents on the morning of April 5, 1992, is GRANTED.

ACCORDINGLY, IT IS FURTHER ORDERED that his statement, the firearms seized from his vehicle, and, as a result of his statement, all evidence from his residence are SUPPRESSED.

## REPORT AND RECOMMENDATION

MORGAN, United States Magistrate Judge.

This matter is before the court on the motion of the defendant Prince Dewitt Wall to suppress evidence found during a warrantless search of his vehicle by ATF agents on the morning of April 5, 1991. The search was conducted without his consent. Defendant seeks to suppress his statement, firearms seized from the vehicle, and, as a result of the statement, all evidence from the residence. Defendant is charged by indictment with four counts based on two guns found during that search. The charges are related to defendant's being a felon in possession of a firearm and making false statements in connection with the acquisition of one of the firearms. The motion to suppress was referred to the magistrate judge and a hearing was held at which one ATF agent and the defendant testified. For the purposes of the motion, defendant accepted as true all the statements in the affidavit in support of the search warrant for the residence. For the reasons discussed in this report, it is recommended that the motion be granted and the evidence suppressed.

Special Agent Geider of the Bureau of Alcohol Tobacco and Firearms (ATF) testified that ATF agents received an anonymous tip that the defendant would be bringing firearms and narcotics into the General Motors plant where he worked. The caller said that the defendant worked the first shift, left home between 5:30 and 6:30 a.m., had been arrested for other crimes, including an arrest for murder, and was planning to murder someone.

The agents partially corroborated the tip, confirming that the defendant did work the first shift at the plant and had several previous arrests including one for homicide, although no dispositions were indicated on the computerized criminal history and no confirmation of any convictions was had before the search. Indeed, the agent testified that he believed that he knew before the search of the car that the homicide charge had been dismissed.[1]

Agents also confirmed that no guns were registered to defendant.

ATF agents then placed the defendant's home under surveillance. They observed him leave his home at approximately 5:30 a.m. He placed an unidentified object in the trunk before entering his vehicle. They followed him to work, and he drove there directly, without incident. The agents, who were in 4 or 5 vehicles, followed him inside the plant parking lot. He got out of his car, and went back to his trunk and opened it. After the trunk was opened, agents (five ATF agents and Washtenaw County Sheriff Deputy Dieter Heron) approached defendant and identified themselves as law enforcement officers. Deputy Heron approached defendant, moved him away from the trunk area, and patted him down. He was not formally placed under arrest by either local or federal officers. ATF Agent Geider then looked into the open trunk, and observed what appeared to be a closed long gun case. Geider opened it and observed a Marlin, Model 9, 9 mm. semi-auto rifle with two loaded magazines inside the case.[2]

Meanwhile, the defendant was placed inside the ATF vehicle where he was read his rights by ATF Agent Scott Toth. Geider signed as witness to this advice. Geider was asked why Toth read defendant his Miranda rights if defendant was not in custody or under arrest. Agent Geider responded that it was standard practice to read all individuals their rights before any questioning, regardless of whether they were under arrest. Toth began to question defendant inside the vehicle, with Geider standing outside the vehicle, while other agents continued to search the trunk and the passenger portions of the vehicle for narcotics and firearms. No drug related evidence was found. However, in the

---

1. Defense counsel stated at the hearing that defendant had been acquitted of that charge, although he had been convicted of unrelated property crimes and one weapons offense.

2. It should be noted that no licensing or registration requirement exists for long guns in Michigan. The lawful method of transporting such weapons is, under law, in the trunk, unloaded and in a gun case. Violation is a misdemeanor. See, M.C.L.A. § 750.227c.

trunk, in a closed duffle bag, ATF agents found a handgun. After being confronted with the guns found in the car, defendant gave a statement admitting ownership of the guns.

Although the parties dispute whether the defendant was handcuffed during these procedures, the determination is not material to the outcome. The defendant testified that he was placed against the car by the deputy sheriff, then someone handcuffed his hands behind his back. He stated that he was handcuffed while in the patrol car, but later his handcuffs were removed to sign the statement. The agent stated that he does not recall whether defendant was handcuffed, but did not believe that he was.

Both sides agree that following the advice of rights and while ATF agents were searching his car, defendant was questioned by Agent Toth. After making and signing a written statement in which he admitted ownership of the guns and that he had another gun in his home, defendant proceeded inside the plant to go to work. The search and related activities took somewhere between 30 minutes to an hour.

Later that day, Agent Geider determined through the Wayne County Probation Department that defendant Wall was previously convicted for the felony offense of carrying a concealed weapon in a motor vehicle on October 3, 1989. Based on that information, and the defendant's statement given to Toth, Geider obtained a federal search warrant for the defendant's residence. During that search, a Marlin .22 caliber rifle and documents related to its purchase were seized.

 The fourth amendment governs the constitutional considerations of all searches and seizures by government agents. The fourth amendment recognizes the right of the people to be secure from unreasonable searches and seizures and provides that no warrants shall issue but upon probable cause. Evidence seized unconstitutionally by federal agents is inadmissible in federal criminal trials. *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). The Supreme Court has long expressed a strong preference for the use of arrest and search warrants. *United States v. Jeffers*, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951). A warrantless search is generally considered unreasonable. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973); *United States v. Kelly*, 913 F.2d 261 (6th Cir.1990). As the Court noted in *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), "in a doubtful or marginal case, a search under a warrant may be sustainable where without one it would fail."

 The Supreme Court has defined probable cause to search as a fair probability under the totality of the circumstances that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983). *Gates* involved review of a search warrant issued by a magistrate. The Court adopted a "totality of the circumstances" analysis for probable cause. *Id.* at 236–237, 103 S.Ct. at 2331–2332. Under this standard, probable cause for a warrant to issue may be based on information from an anonymous informant that can be independently corroborated. *Gates*, at 241, 103 S.Ct. at 2333. The personal observations of the officers may also confer probable cause. See, *McDonald v. United States*, 335 U.S. 451, 454–55, 69 S.Ct. 191, 192–93, 93 L.Ed. 153 (1948) (dictum); *United States v. Cruz*, 834 F.2d 47, 51 (2d Cir.1987), *cert. denied*, 484 U.S. 1077, 108 S.Ct. 1056, 98 L.Ed.2d 1018 (1988). In determining whether probable cause exists, courts more readily accept the judgment of a law enforcement officer if it is backed by a warrant issued by a magistrate. *United States v. Watson*, 423 U.S. 411, 423, 96 S.Ct. 820, 827, 46 L.Ed.2d 598 (1976); *Gates, supra*, 462 U.S. at 236, 103 S.Ct. at 2331, citing *United States v. Ventresca, supra*, 380 U.S. at 108, 85 S.Ct. at 745.

 As a general rule, probable cause is needed for searches whether or not police obtain a warrant. *Carroll v. United States*, 267 U.S. 132, 155–56, 45 S.Ct. 280, 285–86, 69 L.Ed. 543 (1925). A lesser standard, that of reasonable suspicion of crimi-

nal activity, may justify a minimal level of government intrusion under the fourth amendment when an important government interest is at stake. See, *Maryland v. Buie,* 494 U.S. 325, 333–34, 110 S.Ct. 1093, 1097–98, 108 L.Ed.2d 276 (1990) (reasonable suspicion that suspect engaged in criminal activity justified brief investigatory detention); *Terry v. Ohio,* 392 U.S. 1, 22–24, 88 S.Ct. 1868, 1880–1881, 20 L.Ed.2d 889 (1968) (reasonable suspicion that suspect armed and dangerous justified pat down frisk for weapons).

■ However, a valid investigatory detention must be reasonable in scope and conducted for a legitimate investigatory purpose. While a limited pat down frisk for weapons may generally be conducted during the detention, and a passenger compartment of a vehicle may also be searched for the officers' safety, this authority does not permit a search for mere evidence. *Michigan v. Long,* 463 U.S. 1032, 1049–50, 103 S.Ct. 3469, 3480–81, 77 L.Ed.2d 1201 (1983); *United States v. Kelly,* 913 F.2d 261, 264 (6th Cir.1990).

■ Searches incident to a lawful arrest are justified without any level of suspicion. *Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2039–40, 23 L.Ed.2d 685 (1969). However, a warrantless search that provides probable cause to make a subsequent arrest may not be justified as a search incident to that arrest. *Smith v. Ohio,* 494 U.S. 541, 110 S.Ct. 1288, 108 L.Ed.2d 464 (1990) (per curiam). In *Smith,* the police officers arrested the defendant on drug charges immediately after discovering drug paraphernalia during a warrantless search of a paper bag belonging to the defendant. *Id.* at 542, 110 S.Ct. at 1289. The Court noted that "it is axiomatic that an incident [to arrest] search may not precede an arrest and serve as part of its own justification." *Id.*

■ When actions by the police exceed the bounds of reasonable suspicion, the seizure becomes an arrest and must be justified by probable cause. *Florida v. Royer,* 460 U.S. 491, 502–03, 103 S.Ct. 1319, 1326–27, 75 L.Ed.2d 229 (1991) (plurality opinion). The Supreme Court has declined to establish a bright line rule to distinguish when a *Terry* stop becomes an arrest, leaving courts to decide the issue on a case by case basis. See, *United States v. Sharpe,* 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985). Factors to be considered include the restraints placed on a person's liberty or freedom of movement, the length of the detention, use of weapons or bodily force. See, *Royer, supra;* and *United States v. Seelye,* 815 F.2d 48 (8th Cir.1987) (listing factors). After making any warrantless arrest, the police must promptly secure a judicial determination of probable cause. *Gerstein v. Pugh,* 420 U.S. 103, 113–14, 95 S.Ct. 854, 862–63, 43 L.Ed.2d 54 (1975), see, *County of Riverside v. McLaughlin,* —— U.S. ——, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991).

Here, the government originally sought to justify the search as a search incident to arrest. However, at the evidentiary hearing, counsel for the government withdrew that contention, stated that there was no arrest, and did not argue that this was a search incident to arrest. The government has not clearly articulated any alternative underlying theory upon which it relies to uphold the search. The government should be required to state such a theory, rather than require the court to cast about for a rationale. However, in the interests of judicial economy, alternative theories will be explored for the benefit of the reviewing judge.

### 1. IS THIS A SEARCH INCIDENT TO ARREST?

■ The government concedes that no formal arrest was made at the time, although defendant was in custody at the scene. He was placed in a government vehicle with a government agent, the doors were closed, he was read his *Miranda* rights, and he may have been handcuffed. Thus, there was a substantial limitation on his freedom of movement. Moreover, he was detained for more than 30 minutes while the agents searched his vehicle and he gave a statement. However, for the arrest to be lawful, it must be based on probable cause under the totality of the circumstances. Here, the agents never arrested the defendant, nor sought a prompt judicial determination of probable cause.

Under all the circumstances, this court cannot now justify the search on the basis of a search incident to arrest. The agents had no knowledge that defendant had ever been convicted of a felony at the time they searched the car. The closed long gun case, visible in the open trunk, did not provide any clear evidence that the defendant was committing a crime. No narcotics or contraband was visible, nor was any found during the search.

As noted by the Supreme Court in *Smith v. Ohio, supra,* the results of the search cannot supply probable cause to legitimate the search.

## 2. WAS THE SEARCH WITHIN THE SCOPE OF A *TERRY* STOP?

 The agent testified that defendant was merely detained. The court construes this testimony as indicating that defendant was stopped pursuant to *Terry v. Ohio,* and its progeny, for further investigation. The circumstances surrounding the somewhat lengthy detention were consistent with *Terry.* Defendant was not moved to another location, the agents were diligent and did not delay their investigation, and defendant was questioned, gave a written statement, and was released to go to work. Thus, the situation appears most consistent with a *Terry* stop.

However, the scope of this search exceeds the bounds of a search pursuant to a *Terry* stop. Defendant's entire car was searched for narcotics and for weapons. No narcotics were found. Defendant was initially patted down for weapons, and then placed in the ATF vehicle. Four or five officers were between defendant and his car. It was only after the defendant had been patted down and removed to the ATF vehicle that the search of the car was conducted. The agent did not testify that the search was done for the officers' safety. See, *Michigan v. Long, supra.* Rather, the testimony clearly indicated that it was a search for narcotics and weapons, evidence to corroborate the anonymous tip. Under these circumstances, the search cannot be sustained.

## 3. WAS THE SEIZURE JUSTIFIED UNDER THE "PLAIN VIEW" DOCTRINE?

The "plain view doctrine" was an exception to the rule of *Marron v. United States,* 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927) that prevented the seizure of one thing under a warrant describing another. First articulated in *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1972), the doctrine allows the seizure of objects "of incriminating character" without a warrant particularly describing them. The Court held:

"Where once an otherwise lawful search is in progress, the police inadvertently come upon a piece of evidence, it would often be a needless inconvenience, and sometimes dangerous—to the evidence or the police themselves—to require them to ignore it until they have obtained a warrant particularly describing it."

403 U.S. at 467–68, 91 S.Ct. at 2039.

The inadvertent aspect was specifically repudiated in *Horton v. California,* 496 U.S. 128, 138, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990).

 An essential predicate to a seizure is a showing that the officer did not violate the fourth amendment in arriving at the place from which the evidence could be plainly viewed. This predicate includes an arrest warrant, seizure warrant, or a recognized exception to the warrant requirement. In *Horton,* the Court held that additional conditions must exist: 1) the incriminating nature must be immediately apparent, and 2) the officer must have a lawful right of access to the object itself. Here, the closed long gun case and the duffel bag in the trunk did not reveal any incriminating nature which was immediately apparent. It was not until these containers were opened and the weapons inspected that they were observed to be loaded. It was not until later in the day that police knew defendant was a convicted felon.

Unlike the sawed-off shotgun in *United States v. Truitt,* 521 F.2d 1174 (6th Cir. 1975), the closed long gun case carried in the trunk by a citizen has no immediately apparent incriminating nature. See, *Unit-*

ed States v. Gray, 484 F.2d 352 (6th Cir. 1973) (rifles, later discovered stolen, not of immediately incriminating nature.) Moreover, it was not found in close proximity to any illegal drugs. Indeed, no drugs were found at all. See, *United States v. Matthews*, 942 F.2d 779, 783 (10th Cir.1991).

It is important to distinguish "plain view" as used in *Coolidge* to justify the *seizure* of an object from an officer's mere *observation* of an item left in plain view. Whereas the later generally involves no fourth amendment search, "... the former generally does implicate the amendment's limitations upon seizures of personal property." *Texas v. Brown*, 460 U.S. 730, 738, n. 4, 103 S.Ct. 1535, 1541, n. 4, 75 L.Ed.2d 502 (1983). Mere observation of an object without its seizure may contribute to the probable cause or reasonable suspicion to seize the object.

Such observation coupled with the other corroboration of the anonymous tip *may* have provided sufficient probable cause under the totality of the circumstances to obtain a warrant. *Cf., Illinois v. Gates, supra.* However, here, no warrant was issued, nor·did the agents even attempt to obtain a warrant.

██ The government has identified no exigent circumstances which would provide an exception to the warrant requirement. These exceptions are fact sensitive and scarce. *Arkansas v. Sanders*, 442 U.S. 753, 759–60, 99 S.Ct. 2586, 2590–91, 61 L.Ed.2d 235 (1979). It would be improper for the court to presume an exception when one has not been articulated, nor even urged, by the government. This vehicle was parked in a private lot with GM security personnel available, several agents were present, the defendant was on his way to the plant to go into work, the car was not moving, this was early in the day during normal business hours. No exigent circumstances are shown for the failure to seek a warrant. See, *Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990); *United States v. Boffman*, 747 F.Supp. 1251, 1254 (S.D.Ohio 1990).

**4. THE GOOD FAITH EXCEPTION OF *UNITED STATES v. LEON*, 468 U.S. 897, 104 S.CT. 3405 (1984) DOES NOT APPLY.**

██ The holding in *Leon* does not modify the exclusionary rule in cases in which the police have acted without a warrant. 2 Wright, *Federal Practice & Procedure*, § 408 (2nd Ed.1982 and Supp.1990); *United States v. Boffman*, 747 F.Supp. 1251 (S.D.Ohio 1990).

Accordingly, it is recommended that the motion to suppress be granted on the grounds that the search was outside the scope of a search incident to a *Terry* stop, was not incident to an arrest based on probable cause, and was not otherwise lawful. In so finding, the court must also conclude that the statement and subsequent warrant to search the residence was tainted, and all evidence seized pursuant to said warrant must be suppressed. See, *Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S.Ct. 407, 417–18, 9 L.Ed.2d 441 (1963).

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D.Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir.1981); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir.1991). Filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987); *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991). Pursuant to E.D.Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five

(5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: Oct. 9, 1992.