[Cite as *State v. McGee*, 2013-Ohio-4165.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

STATE OF OHIO,                                    )
                                                  )
    PLAINTIFF-APPELLANT,                       )
                                                  )        CASE NO. 12 MA 123
V.                                                )
                                                  )        OPINION
RYAN McGEE,                                       )
                                                  )
    DEFENDANT-APPELLEE.                        )

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Criminal Appeal from Court of Common Pleas of Mahoning County, Ohio Case No. 09CR202A |
| JUDGMENT: | Affirmed |

APPEARANCES:

| | |
|---|---|
| For Plaintiff-Appellant | Paul Gains Prosecutor Nicholas A. Brevetta Assistant Prosecutor 21 W. Boardman Street Youngstown, Ohio 44503 |
| For Defendant-Appellee | Attorney J. Gerald Ingram 7330 Market Street Youngstown, Ohio 44512 |

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite

Dated: September 18, 2013

DONOFRIO, J.

{¶1} Plaintiff-appellant State of Ohio appeals the decision of the Mahoning County Common Pleas Court sustaining a motion to suppress physical evidence taken from defendant-appellee Ryan J. McGee.

{¶2} On February 21, 2009, at approximately 10:30 PM, a double shooting occurred at two houses across the street from one another at 945 and 946 Delaware on the north side of Youngstown, Ohio. Physical evidence in the form of shell casings and footprints in the snow indicated that a shootout had occurred between a group of people standing in front of 945 Delaware and people inside of 946 Delaware. A juvenile who was at 945 Delaware was shot and taken to the hospital. An adult, Melkanoe Bowman, who was inside 946 Delaware was shot and taken to the hospital where he later died from his injuries.

{¶3} Detective-Sergeant Daryl Martin became the lead investigator of the shooting and homicide. While there were no suspects at the scene, McGee and Keilan Clinkscale, both suffering from gunshot wounds, arrived at North Side Hospital shortly after the shooting occurred on Delaware. McGee and Clinkscale, who are cousins, claimed they had been shot on the south side of town, although police had not received any reports of a shooting on that side of town.

{¶4} Through his investigation, Det. Sgt. Martin learned that there was an ongoing feud between Clinkscale and the victim, Bowman. Det. Sgt. Martin arranged to have McGee transported to the police department upon his release from the hospital. The hospital released McGee later that night (beginning into the next day on February 22, 2009). Police took McGee's clothes and shoes, and while he was still dressed in a hospital gown, transported him directly to the police department for an interview. The interview began at 3:53 AM and the police performed a gunshot residue test on McGee. Apparently, McGee initially denied involvement in the north side shooting but then eventually gave a second version of events that implicated himself and Clinkscale. The interview ended at 5:06 AM at which time Det. Sgt. Martin formally placed McGee under arrest.

{¶5}   On February 26, 2009, a Mahoning County grand jury indicted McGee and Clinkscale each on one count of murder in violation of R.C. 2903.02(B)(D), a life felony, and one count of improperly discharging a firearm at or into a habitation in violation of R.C. 2923.161(A)(1)(C), a second-degree felony. McGee retained counsel, pleaded not guilty, and his case proceeded to discovery and other pretrial matters.

{¶6}   On September 24, 2009, McGee filed a motion to suppress any inculpatory statements he made to police when he was questioned. The trial court held a hearing on the motion on November 2, 2010, at which Det. Sgt. Martin was the sole testifying witness. On August 19, 2011, the trial court sustained the motion on two grounds. First, the trial court found that McGee was under arrest when the police transported him after his release from the hospital to the police department. While acknowledging that there was enough evidence to constitute reasonable suspicion to investigate further, the court found that there was not enough evidence to constitute probable cause to arrest McGee. Second, the court concluded that McGee's statement was not voluntary. After viewing a videotaped recording of the interview, the court reasoned that McGee's will had been overborne and his capacity for self-determination critically impaired. The propriety of this ruling was not contested by the state on appeal. See App.R. 5 (on seeking leave to appeal); R.C. 2945.67(A) (appeal by state).

{¶7}   On April 12, 2012, McGee filed another motion to suppress, this time directed at the gunshot residue test and any evidence stemming from the police seizure of his clothes and shoes. The state did not respond to the motion. The trial court sustained the motion on June 27, 2012. This appeal followed.

{¶8}   As pointed out by counsel for McGee, it should be noted at the outset that the state has failed to properly provide the November 2, 2010 transcript of proceedings of McGee's first suppression motion (inculpatory statements) upon which the trial court also based its decision on McGee's second suppression motion (physical evidence). A transcript is necessary because an appellant shoulders the

burden of demonstrating error by reference to matters within the record. *See State v. Skaggs*, 53 Ohio St.2d 162, 163, 372 N.E.2d 1355 (1978).

{¶9} This principle is embodied in App.R. 9(B), which states in relevant part:

At the time of filing the notice of appeal the appellant, in writing, shall order from the reporter a complete transcript or a transcript of the parts of the proceedings not already on file as the appellant considers necessary for inclusion in the record and file a copy of the order with the clerk. * * * If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the weight of the evidence, the appellant shall include in the record a transcript of all evidence relevant to the findings or conclusion.

{¶10} A determination of whether the good faith exception applies in this case is a highly fact based determination. Thus, the transcript of this proceeding is imperative for our review. The Ohio Supreme Court has held, "when portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings and affirm." *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980).

{¶11} On November 9, 2012, this court noted that a review of the docket had disclosed that no transcript of proceedings had yet to be filed and granted the state 30 days to file the transcript or face dismissal for want of prosecution. The state filed its merit brief on December 10, 2012. Attached to it is what appears to be a complete copy of the November 2, 2010 transcript of proceedings. The transcript contains the court reporter's certification, but is not file stamped.

{¶12} No transcript having yet been formally filed in the trial court or this court, on February 21, 2013, counsel for McGee filed a motion to dismiss this appeal on that basis. In general, appellate courts have held that attaching what appears to be a

copy of a complete transcript of the proceedings to the appellant's brief is not sufficient to make the purported transcript part of the appellate record if it lacks a file stamp. *State v. Alford*, 3rd Dist. Nos. 13-94-43 & 13-94-44, 1995 WL 363751 (June 2, 1995); *State v. Johnson*, 8th Dist. Nos. 63499, 63500, 63501, 1993 WL 335446 (Sept. 2, 1993); *but see In Matter of Mental Illness of White*, 9th Dist. No. 17325, 1996 WL 48524 (Feb. 7, 1996) (accepting a photocopy of a transcript attached to appellant's brief despite not being filed with the court in accordance with App.R. 9 in a civil case reviewing manifest weight of the evidence).

{¶13} In this instance, while the state has attached what appears to be a complete copy of the November 2, 2010 transcript of proceedings to its merit brief, it has not separately filed the transcript in accordance with App.R. 9. Therefore, the transcript is not properly part of the appellate record before this court. The state's failure to properly file the transcript is not by itself a sufficient ground upon which to dismiss the appeal. However, as indicated, absent the transcript upon which the state relies in support of its assignment of error, this court has nothing to pass upon and thus, as to that assigned error, this court has no choice but to presume the validity of the trial court's proceedings and affirm.

{¶14} Nevertheless, even if we were to consider the transcript attached to the state's appellate brief, we would still affirm the trial court's decision concerning McGee's second motion to suppress. The state's sole assignment of error states:

> THE TRIAL COURT SHOULD HAVE DENIED APPELLANT'S MOTION TO SUPPRESS, BECAUSE THE EVIDENCE WAS NOT DISCOVERED THROUGH PRIOR SUPPRESSED STATEMENTS. RATHER, THE EVIDENCE WAS DISCOVERED THROUGH THE GOOD FAITH EXCEPTION TO THE EXCLUSIONARY RULE.

{¶15} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and

evaluate the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara* (1997), 124 Ohio App.3d 706, 707 N.E.2d 539." *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8.

{¶16} Without much explanation, the state argues that when McGee offered up his second version of events implicating himself and Clinkscale in the shooting, the good faith exception applied to allow for a warrantless arrest and search of him.

{¶17} "Unreasonable searches and seizures are constitutionally prohibited. Ohio Const. Sec. 14, Art. I; U.S. Const. Amend. IV and XIV; *Maryland v. Buie* (1990), 494 U.S. 325, 331; *State v. Robinette* (1997), 80 Ohio St.3d 234, 238-239. For a search or seizure to be reasonable, it must be supported by a warrant or based upon an exception to the warrant requirement. *Katz v. United States* (1967), 389 U.S. 347, 357." *State v. Adams*, 7th Dist. No. 08 MA 246, 2011-Ohio-5361, ¶ 34. The Ohio Supreme Court has recognized seven exceptions to the warrant requirement: "(a) [a] search incident to a lawful arrest; (b) consent signifying waiver of constitutional rights; (c) the stop-and-frisk doctrine; (d) hot pursuit; (e) probable cause to search, and the presence of exigent circumstances; or (f) the plain-view doctrine," *State v. Akron Airport Post No. 8975*, 19 Ohio St.3d 49, 51, 482 N.E.2d 606 (1985), certiorari denied 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 777 (1986); or (g) an "administrative search," *Stone v. Stow*, 64 Ohio St.3d 156, 164, fn. 4., 593 N.E.2d 294 (1992).

{¶18} The state does not argue that any of the aforementioned exceptions to the warrant requirement apply. Rather, it cites two cases from the Fifth District Court of Appeals for the proposition that the good faith exception to the exclusionary rule can be applied even if no warrant exists. The good faith exception was adopted by the United States Supreme Court in *U.S. v. Leon*, 468 U.S. 897, 104 S.Ct. 3430, 82

L.Ed.2d 677 (1984). In order to protect people's constitutional right to be free from unreasonable searches and seizures, courts typically employ the exclusionary rule to make illegally seized evidence inadmissible in court, thus deterring police officers from conducting unlawful searches. *Leon* made an exception to the exclusionary rule, however, when an officer acts in good faith in executing an otherwise invalid search warrant. The good faith exception will apply if the officer obtained the evidence while acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate. *State v. George*, 45 Ohio St.3d 325, 330, 544 N.E.2d 640 (1989).

{¶19} In *State v. Day*, 19 Ohio App.3d 252, 483 N.E.2d 1195 (5th Dist.1984), the Fifth District Court of Appeals extended the good faith exception to a case where no warrant existed. Police had received an anonymous telephone call that the defendant was at a truck stop with a gun. When they arrived, police were unable to identify the caller, but a manager recalled that he had seen the defendant on previous occasions with a gun and pointed him out to police. Police approached him and told him they were investigating a complaint that he was carrying a gun. He volunteered that he did have a gun and police searched him and recovered a handgun. Following his indictment for carrying a concealed weapon, the defendant sought suppression of the handgun. The trial court granted the motion to suppress.

{¶20} On appeal, the Fifth District emphasized that the exclusionary rule is a judicially created remedy and not a personal constitutional right. Relying on *Leon*, it adopted a good faith exception to the exclusionary rule "measured by a number of factors, including a cost-benefit, balancing analysis, the circumstances of the search, its place and duration, the extent of intrusion, the good faith suspicions of the law officer, and the tangible nature of the object seized." *Id.*, paragraph one of the syllabus.

{¶21} Applying the exception to the facts before it, the court observed:

> In this case it is clear to us that the "benefit" that would flow from suppressing this evidence, *i.e.,* the punishment of the police officer and

deterrence of future illegal conduct, is measurably outweighed by the cost. The public safety is in jeopardy when a person is in a public restaurant violating the law by carrying a concealed weapon. A law enforcement officer acts reasonably when he responds to an anonymous telephone call identifying the person and place, and claiming that he is armed with a concealed weapon; unsuccessfully attempts to verify the credibility of the informant; enters the public restaurant and learns from several sources that the person is present and that no weapon has been observed, although he has previously had a gun; approaches the accused from the rear, orders him to place his hands upon the table at which he is sitting, asks him if he has a weapon, is advised by the suspect that he does, and is patted down, the weapon being recovered. (The suggestion that the officer should have permitted the suspect to retrieve and deliver the weapon is absurd.) Under these circumstances there was *no unreasonable search.*

(Emphasis sic.)

{¶22} The Fifth District's approach in *Day* seems unsound for two reasons. First, the *Day* decision is peculiar in that it is unclear why the court saw the need to craft a warrantless search good faith exception to the exclusionary rule in the first place. The police officers in *Day* had reasonable suspicion to conduct a *Terry* stop of the defendant. They had received an anonymous phone call indicating that the defendant was at the truck stop with a gun and the manager of the truck stop told the police when they arrived that he had seen the defendant with a gun on previous occasions. Moreover, when the officers approached the defendant and inquired, he voluntarily acknowledged having a gun. At that point, the police officers arguably had probable cause to arrest the defendant for carrying a concealed weapon and conduct a search incident to that lawful arrest. Hence, there existed a valid and recognized

exception to the warrant requirement and there was no reason to look to a good faith exception.

**{¶23}** Second, the *Day* decision seems to overlook the rationale behind the United State Supreme Court's decision in *Leon*. In *Leon*, the Court crafted a narrow exception to the exclusionary rule where the evidence was obtained by police officers who acted in objectively reasonable reliance on a search warrant issued by a neutral and detached magistrate. The Court's rationale was threefold:

> First, the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates. Second, there exists no evidence suggesting that judges and magistrates are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion.
>
> Third, and most important, we discern no basis, and are offered none, for believing that exclusion of evidence seized pursuant to a warrant will have a significant deterrent effect on the issuing judge or magistrate.

(Footnote omitted.) *Leon*, 468 U.S. 897, 916, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

**{¶24}** The Court's rationale in *Leon* has no application in a case such as this where there is no search warrant. As an Ohio United States District Court explained:

> Justice White's opinion goes to great extents to declare that the underlying purpose of the exclusionary rule, to deter police misconduct, is not applicable when it is the judiciary that is in error in issuing the warrant and not the officer in executing it. *Leon* is simply misplaced in the instant matter. *The holding in Leon does not modify the exclusionary rule in cases in which the police have acted without a warrant.* 2 Wright, *Federal Practice and Procedure* § 408 (2nd ed. 1982

& Supp.1990). Therefore, the government's argument that the officers' warrantless search could be legitimized based on *Leon*'s "good-faith" exception is clearly misplaced and fails to save the evidence seized in this case from the exclusionary rule.

(Footnote omitted; Emphasis added.) *United States v. Boffman*, 747 F.Supp. 1251, 1254 (S.D.Ohio 1990).

{¶25} The other Fifth District case the state relies upon is *State v. Gunzenhauser*, 5th Dist. No. 09-CA-21, 2010-Ohio-761. There, a police officer initiated a traffic stop of the defendant on the basis that the right rear brake light of his vehicle was not working. The officer detected a strong odor of cologne which given his experience was often used to mask the smell of marijuana in a car. The officer called for a K9 and asked the defendant if he had any drugs in the car at which point the defendant admitted that there was marijuana and paraphernalia in the car. Following his arrest for possession of marijuana and drug paraphernalia, the defendant filed a motion to suppress the physical evidence obtained as a result of the stop. At the suppression hearing, the state argued that the police officer had stopped the defendant for violating R.C. 4513.071 which requires two stop (brake) lights on the rear of a vehicle. However, the left rear brake light and the brake light located in the rear window of the defendant's vehicle were both working. The trial court denied the defendant's motion to suppress and determined that it did not need to decide whether the defendant had violated R.C. 4513.071. Instead, the trial court found that even if the officer was mistaken as to the applicable law, as long as the stop was objectively reasonable, then the stop was not illegal. On appeal, the Fifth District Court of Appeals agreed.

{¶26} After characterizing the exclusionary rule as a strictly federal creation for which Ohio has no corollary, the Fifth District went on to reference a narrow exception to the rule that has developed under Ohio law:

Under limited circumstances, courts have held that the exclusionary rule may be avoided with respect to evidence obtained in a stop based on conduct that a police officer reasonably, but mistakenly, believes is a violation of the law. *City of Wilmington v. Conner* (2001), 144 Ohio App.3d 735, 740, 761 N.E.2d 663, citing *State v. Greer* (1996), 114 Ohio App.3d 299, 300-301, 683 N.E.2d 82. Such cases necessarily involve a mistake of law rather than a mistake of fact. "Because courts must be cautious in overlooking a police officer's mistakes of law, the mistake must be objectively reasonable." *Id.;* see also *People v. Teresinski* (1980), 26 Cal.3d 457, 462-464.

Where a statute is vague or ambiguous, or requires judicial construction to determine its scope or meaning, exceptional circumstances exist which permit courts to extend the good faith exception to the exclusionary rule to not only mistakes of fact, but also mistakes of law. See e.g., *Greer,* supra, at 303.

This exception to the exclusionary rule must be "narrowly tailored in order to avoid giving police officers the incentive to construe statutes and ordinances broadly for the purpose of finding a violation" upon which to predicate a stop. The police officer must be held to a higher standard of knowledge of the law than would be appropriate for an ordinary citizen, since it is the police officer's special function to apply and to enforce laws. The police officer's mistake of law must be objectively reasonable.

*Id.* at ¶¶ 16-18.

**{¶27}** Since there were conflicting interpretations among the different courts of appeal on whether R.C. 4513.071 required two brake lights working at any given time or that all the brake lights, of which there must be two, must be working all the time, the Fifth District determined that the officer's interpretation of the statute was objectively reasonable.

**{¶28}** The state's reliance on *Gunzenhauser* here is misplaced as well. First, it does not appear that the Ohio Supreme Court or this court has ever adopted the narrow exception set forth in *Gunzenhauser*. Second, this case does not involve a vague or ambiguous statute and Det. Sgt. Martin's objectively reasonable but mistaken interpretation of it.

**{¶29}** In addition to the unsound legal basis of the state's argument, the factual premise underlying it is unsupported by the transcript attached to the state's appellate brief. In its brief, the state avers that "Det. Sgt. Martin, after hearing Defendant-Appellee's second statement, believed he had probable cause to arrest and was acting in 'good faith' when he performed the gunshot residue test." (State's Brief, p. 6.) This suggests that Det. Sgt. Martin did not perform the gunshot residue test on McGee until after McGee gave his second, inculpatory statement towards the end of the interrogation. However, Det. Sgt. Martin's own testimony does not bear this out:

> Q      When you first come in contact with Mr. McGee what do you say to him?
>
> A      Exact words right when I first met him?
>
> Q      Yeah.
>
> A      I don't recall my exact words.
>
> Q      You recall the substance of it?
>
> A      How are you doing.
>
> Q      Do you recall whether you had much of a conversation with him before the videotape is turned on?
>
> A      I don't believe there was any conversation.
>
> Q      No conversation before the videotape is turned on?
>
> A      No.
>
> Q      Like one of the first things you tell him on the videotape is his constitutional rights; do you recall that?
>
> A      No. The first thing was I had the GSR test done on him.

\* \* \*

Q      Do you ask him to consent to the taking of the sample?

A      I said, we're going to do a GSR test on your hands. I didn't ask him.

Q      Repeat what you just said.

A      I just said, we're going to do a GSR test on your hands.

\* \* \*

Q      Would you have consent forms at the Youngstown Police Department?

A      Yes.

Q      Did you contemplate executing a consent form to the taking of this sample?

A      I have never done a consent form on a GSR test.

Q      Because you don't ask for consent?

A      Yeah, we ask for it.

Q      Did you ask him for consent?

A      I don't recall if I asked him. I believe I just told him.

(Tr. 38-40.)

**{¶30}** Thus, of the seven recognized exceptions to the warrant requirement, the only one that might be applicable to the present case is a search incident to a lawful arrest. However, when the trial court ruled upon McGee's motion to suppress his inculpatory statements, it explored in depth whether McGee had, in fact, been lawfully arrested. Its rationale is equally helpful here.

**{¶31}** Before Det. Sgt. Martin instructed officers to have McGee taken from the hospital to the police department, there were limited facts connecting McGee to the shooting. McGee and Clinkscale had arrived at North Side Hospital with gunshot wounds on the same evening as the shooting and there had been no reports of a shooting on the south side of town which is where they said they had been shot. In addition, Clinkscale (not McGee) had an ongoing dispute with one of the victims. As

the trial court appropriately concluded, while this may have been enough to give Det. Sgt. Martin reasonable suspicion to investigate further, it did not constitute probable cause to arrest McGee. Therefore, McGee's clothes and shoes as well as any gunshot residue recovered from his person were unlawfully seized by the police and should be suppressed and rendered inadmissible at trial.

{¶32} Accordingly, if we consider the transcript the state attached to its appellate brief, we would find the state's sole assignment of error without merit. In that the state failed to properly file the transcript for inclusion in the appellate record, we overrule the state's sole assignment of error and affirm the trial court's judgment.

Vukovich, J., concurs.

Waite, J., concurs.