THE STATE OF OHIO, APPELLANT, *v.* DAY, APPELLEE.

(No. CA-1854—Decided October 1, 1984.)

*Ronald L. Collins,* prosecuting attorney, for appellant.

*Douglas J. O'Meara,* for appellee.

MILLIGAN, J. The Tuscarawas County Court of Common Pleas, upon pretrial motion of the defendant-appellee, Richard L. Day, ordered sup-

pression of a gun. The state appeals, assigning a single error:

"The trial court erred in suppressing the evidence when police seized a gun after receiving an anonymous tip specifically identifying the defendant, describing the weapon, and the place where the weapon and the defendant would be found and the police acted prudently and in good faith with due concern for safety in a public restaurant particularly when the defendant admitted having the weapon prior to the seizure."

Following the indictment of the defendant for carrying a concealed weapon, the court conducted a hearing upon defendant's motion to suppress evidence. The trial court overruled the same. Thereafter, defendant's motion for reconsideration was heard by a visiting judge (different than the trial judge) who, upon the transcript, without any further testimony, granted the motion to suppress.[1]

## Facts

At 11:30 p.m. on June 2, 1981, the police dispatcher for the Newcomerstown Police Department received an anonymous telephone call wherein the caller identified a male at a truck stop and said:

"Are you allowed to carry a gun on your side? There is a fellow here has one[,] looks like a knifeholder[,] but it is a gun. His name is Major Day."

Because the Newcomerstown truck stop is outside the jurisdiction of the Newcomerstown Police Department, the dispatcher radioed the sheriff's deputy, advising that there was "a man with a gun at the Newcomerstown truck stop." Deputy Fred Smith and four other deputies went to the truck stop and consulted with the manager and other employees, inquiring as to whether they had made the call. No one was able to identify the caller; however, the manager pointed out defendant to the deputies. At the hearing, one of the deputies testified as follows:

"He [the manager] said he didn't know if he [the accused] had a gun, but advised us on previous occasions he had seen the man with the gun."

The manager also stated that defendant had caused no commotion or disturbance then or in the past in the truck stop. In addition, at the hearing, to the question propounded by defendant's counsel, "all you knew was there was a man there with a gun?", the deputy answered, "right."

After speaking to the manager, two deputies approached defendant from the rear. He was seated in a booth and visible only from the shoulders and head.

The deputies, standing behind defendant and his booth, told defendant they had "a complaint he was carrying a [concealed] weapon and were investigating the complaint." They then told him to put his hands on the table which he did. At the hearing, one of the deputies stated:

"He [the accused] said he was carrying a gun and he would get it. I [the deputy] said keep your hands on the table and I would get the gun."

The deputy acknowledged that he had determined in his own mind to conduct a pat-down search and that defendant would not have been permitted to refuse the same. The officer acknowledged that defendant was not conducting himself, in his presence, in any suspicious manner.

---

[1] Neither party challenges the procedural posture in this case wherein the trial court, by a different judge, reconsiders the suppression motion upon the transcript.

The parties further agree that there is no issue of credibility involved in the decision of the trial court, *i.e.,* for the purposes of determining the propriety of the suppression order, the facts herein stated are uncontroverted.

The pat-down search ensued. The deputy further testified that:

"I reached around the waistband and found this hung on the belt of his holster. I removed the gun at that time in order not to create a scene and asked Mr. Day to step out back where we could discuss the situation."

Thereafter, the officers took defendant to the back door of the truck stop, where, additionally, a couple of .22 caliber rounds and a small canister of chemical tear gas were removed. He was then placed under arrest and subsequently charged and indicted for carrying a concealed weapon.

The search was without warrant.

## Discussion

We sustain the assignment of error. The trial court, in sustaining the motion to suppress, abused its discretion. Our reasons follow.

The Fourth Amendment to the United States Constitution provides in part:

"The right of the people to be secure in their persons, houses, papers, and effects, against *unreasonable* searches and seizures, shall not be violated. * * *" (Emphasis added.)

The deputy sheriffs acted reasonably at each step. In fact, to do less than was done would create a risk to the public safety far in excess of the claim of interference with any "zone of privacy" claimed by the defendant.

A growing array of Supreme Court decisions underscores the proposition that the conduct of these law officers, under the circumstances outlined above, does not violate the Fourth Amendment. Recently, the Supreme Court of the United States stated:

"* * * Under the Fourth Amendment, we have held, a policeman who lacks probable cause but whose 'observations lead him reasonably to suspect' that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to 'investigate the circumstances that provoke suspicion.' United States v. Brignoni-Ponce, 422 U.S. 873, 881, (1975). '[T]he stop and inquiry must be "reasonably related in scope to the justification for their initiation." ' Ibid. (quoting Terry v. Ohio, supra, at 29, * * *.) Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released. * * *" (Footnotes omitted.)

*Berkemer* v. *McCarty* (1984), 82 L. Ed. 2d 317, 334.

In *Berkemer* the Supreme Court analogized a traffic stop to a *"Terry* stop." In 1968 the Supreme Court decided *Terry* v. *Ohio* (1968), 392 U.S. 1 [44 O.O.2d 383], the rationale of which has continued to affect claims of violation of Fourth Amendment rights as to seizure and *Miranda* rights as to Fifth Amendment self-incrimination rights. Thus, in 1983, the court rejected the claim that *Terry* applied only in circumstances where the police officer's safety was involved and said:

"In sum, we conclude that when an officer's observations lead him reasonably to believe that a traveler is carrying luggage that contains narcotics, the principles of Terry and its progeny would permit the officer to detain the luggage briefly to investigate the circumstances that aroused his suspicion, provided that the investigative detention is properly limited in scope." *United States* v. *Place* (1983), 77 L. Ed. 2d 110, 120.

Further, a *Terry* search is not limited to a pat-down search of the person to the exclusion of a reasonable search of an area. See *Michigan* v. *Long*

(1983), 77 L. Ed. 2d 1201, where a search of the passenger compartment of an automobile was justified when the police officer had a reasonable belief that the suspect was dangerous and may gain immediate control of any weapon within the vehicle if permitted to re-enter, notwithstanding the fact that a *Terry* protective, pat-down search had revealed no weapons. (Contraband [*i.e.,* marijuana] was discovered in the car, which the court said the officer was not required to ignore.)

Although more recent decisions of the Supreme Court focus upon the exclusionary *sanction,* they cast significant light upon the Supreme Court's current understanding of the practical meaning of the Fourth Amendment. In *United States* v. *Leon* (1984), 82 L. Ed. 2d 677, 687, the Supreme Court up front and straight out rejects the notion (sometimes implied in prior opinions of the court), that exclusion of evidence garnered in derogation of constitutional rights is a necessary corollary of the Fourth Amendment.

"Whether the exclusionary sanction is appropriately imposed in a particular case, our decisions make clear, is 'an issue separate from the question whether the Fourth Amendment rights of a party seeking to invoke the rule were violated by police conduct.' * * *" *United States* v. *Leon, supra,* at 688.

See, also, *United States* v. *Calandra* (1974), 414 U.S. 338, 347-348, holding that the exclusionary rule is a judicially created remedy, not a personal constitutional right of the person aggrieved.

In addressing the question of whether the exclusionary sanction is appropriately imposed in a particular case, the Supreme Court in *Leon, supra,* at 688, first addressed a weighing of the "costs and benefits of preventing the use in the prosecution's case-in-chief of inherently trustworthy tangible evidence" (in that case obtained in reliance on a search warrant ultimately found to be defective). The court went on to digest a number of circumstances where the court had adopted a "balancing approach" and concluded that the time had come for the court to clearly enunciate a "good faith exception" to the Fourth Amendment exclusion-of-evidence rule.[2]

In this case it is clear to us that the "benefit" that would flow from suppressing this evidence, *i.e.,* the punishment of the police officer and deterrence of future illegal conduct, is measurably outweighed by the cost. The public safety is in jeopardy when a person is in a public restaurant violating the law by carrying a concealed weapon. A law enforcement officer acts reasonably when

---

[2] Two significant propositions emerge from these recent cases as relate to the Fourth Amendment:

(1) The test for what is an unreasonable search and seizure is not rigid. Searches heretofore summarily found to be unreasonable are now to be examined by different criteria. For over twenty years we have developed an "exception" mentality to the apparent rigid pronouncements of *Mapp* v. *Ohio* (1961), 367 U.S. 643 [16 O.O.2d 384], and progeny. Exceptions when catalogued seem to eclipse the rule in 1984. The concept of good faith now emerges, measured by a number of factors, including a cost-benefit, balancing analysis, the circumstances of the search, its place and duration, the extent of intrusion, the good faith suspicions of the law officer, and the tangible nature of the object seized.

(2) Even if the search is unreasonable, it does not follow *ipso facto* that the sanction of exclusion is the necessary remedy for such constitutional violation. The right guaranteed under the Fourth Amendment is the right not to be unreasonably searched; the remedy, the sanction, is not a constitutionally protected right. Stated differently, the constitutional right to be free of an unreasonable search and seizure does not carry with it a *constitutional* right to have evidence thus obtained suppressed in criminal prosecutions.

he responds to an anonymous telephone call identifying the person and place, and claiming that he is armed with a concealed weapon; unsuccessfully attempts to verify the credibility of the informant; enters the public restaurant and learns from several sources that the person is present and that no weapon has been observed, although he has previously had a gun; approaches the accused from the rear, orders him to place his hands upon the table at which he is sitting, asks him if he has a weapon, is advised by the suspect that he does, and is patted down, the weapon being recovered. (The suggestion that the officer should have permitted the suspect to retrieve and deliver the weapon is absurd.) Under these circumstances there was *no unreasonable search.*

The assignment of error is sustained, the suppression order of the Court of Common Pleas of Tuscarawas County is vacated and overruled, and this cause is remanded to the Court of Common Pleas of Tuscarawas County for further proceedings according to law.

*Suppression order vacated and*
*cause remanded.*

PUTMAN, P.J., and WISE, J., concur.

PUTMAN, P.J., concurring. The foundation of the defendant's position is his claim to "a reasonable expectation of privacy."

In response thereto, I supplement my enthusiastic agreement with all Judge Milligan has written for our court with the observations that the Fourth Amendment, relative to unreasonable searches, is not the only part of the Constitution of the United States; that if "equal protection" of the law and the "privileges and immunities" of federal citizenship are to be more than high sounding but empty phrases, then law-abiding citizens must have some

"reasonable expectation" that they and their children may enter a place of public accommodation free from fear of being gunned down by a previously concealed weapon; that if "victims' rights" is to be more than an empty legislative/media-hype slogan, then there must exist some minimal right of the law-abiding citizen not to become a victim in the first place; and, accordingly, the government must have some minimal obligation to take reasonable measures to breathe life into that expectation; so that the government's conduct on the facts of this case is reasonable in light of the foregoing.

A man's truck stop is not his castle.

MILLIGAN and WISE, JJ., join in the foregoing concurring opinion.