THE STATE OF OHIO, APPELLEE, *v.* FAHY, APPELLANT.

(No. 7-87-5—Decided July 7, 1988.)

*John H. Hanna,* prosecuting attorney, for appellee.

*Sheldon S. Wittenberg,* for appellant.

COLE, J. This is an appeal from a judgment of conviction and sentence of the defendant-appellant by the Court of Common Pleas of Henry County for the offense of drug abuse in violation of R.C. 2925.11(A). Prior to this judgment the defendant had filed a motion to suppress certain evidence and this motion was overruled by the trial court. The defendant then changed his original plea of guilty to one of "no contest" and was accordingly found guilty and sentenced. He now appeals, asserting a single assignment of error:

"It constituted error to deny defendant's motion to suppress."

The circumstances of a search of the defendant prior to his arrest for the offense charged give rise to the questions posed by this assignment of error. There exists in the city of Napoleon in Henry County a certain public parking lot or area adjacent to a funeral home. On August 23, 1986, during the evening, somewhere between fifteen and twenty-four cars were parked therein, some containing people, others being unattended. The parking lot was a popular gathering place for young people and this was a Saturday evening. Two police officers, Detective Bogart and a fellow officer, were in an unmarked vehicle, equipped with binoculars, and were observing the area. They observed certain actions, persons and events which caused them to conclude an offense was in progress. The defendant thereafter entered a car, called the "Fairchild" vehicle, which started to leave.

At this point, the officers, "* * * feeling certain we had witnessed drug activity being there, being undertaken," stopped the car. The officers then "* * * asked each of the people in the vehicle to exit the vehicle, and we proceeded to search each one of them."

In the defendant's trousers was found a small vial of white powder. It was the suppression of this vial of white powder as well as other packets of white powder obtained by a later search of the defendant's person at the police station which was sought by the motion to suppress.

The issue presented is whether the

police violated the Fourth Amendment rights of the defendant in their search of his person. There is a basic exception to the general prohibition against warrantless searches and seizures if the search be incident to and subsequent to a lawful arrest. Here, however, the arrest was subsequent to the first search of the person and, hence, was dependent upon it if the results of that search were essential to the existence of probable cause to arrest.

In *Rawlings* v. *Kentucky* (1980), 448 U.S. 98, 111, the court said:

"* * * Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa. * * *"

However, this is true only so long as the fruits of the search were not necessary to support probable cause to arrest. 2 LaFave, Search and Seizure (2 Ed. 1987) 517, Section 5.4.

The issue then centers upon whether the preceding events constituted probable cause both for the search and for the subsequent arrest without reference to that evidence discovered by the search. Here, if the arrest was invalid then the packet of white powder discovered at the station subsequent to that arrest constitutes also the fruits of an illegal search and is to be suppressed under the exclusionary rule.

This all depends upon the validity of the first search, and this in turn rests upon the existence of facts sufficient to constitute probable cause to arrest the defendant excluding any evidence resulting from the search, *i.e.,* the vial of white powder.

Reviewing the items asserted by the prosecution as constituting probable cause, we find first certain prior knowledge of the policemen as to the situs and as to the people involved. They knew the following:

1. That "our office had received numerous complaints of a lot of unusual activity in that area." Later, on cross-examination, the arresting officer stated that "the only thing we have out there sometimes is noise complaint."

2. That the defendant had a reputation for "involvement in drugs" and that he had been arrested previously for possession of marijuana.

3. That Allen Benien, with whom the defendant was seen to converse, had been arrested for possession of cocaine. Whether this had resulted in conviction was not known.

4. That in the mind of the officer a Mr. Fairchild was a known drug user, but it was not known whether Fairchild had any drug-related convictions.

5. That the defendant was seen talking first to Benien and then to Fairchild.

6. That at no time prior to the arrest had any drugs or any money been seen.

These facts alone are insufficient to constitute any form of probable cause. Mere association and conversation with known drug users are not enough to warrant an inference of current possession or sale of drugs. *Sibron* v. *New York* (1968), 392 U.S. 40. In *Sibron,* the court in its opinion stated at 61-62:

"* * * The inference that persons who talk to narcotics addicts are engaged in the criminal traffic in narcotics is simply not the sort of reasonable inference required to support an intrusion by the police upon an individual's personal security. Nothing resembling probable cause existed until after the search had turned up the envelopes of heroin. It is axiomatic that an incident search may not

precede an arrest and serve as part of its justification. * * *"

Here the arresting officer knew also that the defendant had been at least arrested for a narcotic violation, but we conclude the same reasoning applies. Also, mere association or conversation without knowledge of the content of the conversation is not a sufficient basis for an inference of current drug-related activity. As the court in *Sibron, supra,* states, they might indeed have been talking about the World Series.

The true source of the officer's belief, reasonable or unreasonable, that the prosecution asserts constituted probable cause for the arrest and for an incidental search was the following action observed by the officer:

"Okay. And where was he when you first observed him?

"A. When we first observed Mr. Fahy, he was on the west edge of the parking lot near the — would be the southwest corner of the lot.

"Q. And what did you observe him do?

"A. At that time — again, after he talked to some occupants of the other vehicle, we noticed him appear to look around, maybe see who was there, and then open the trunk of his vehicle, reach up under the lip of the trunk, all the time looking around. He put the trunk lid back down without latching it and went to a Jeep which was parked in that area.

"Q. And who was — do you know who the occupant of the Jeep was?

"A. Yes. At least one of the occupants in the Jeep was Allen Benien. "* * *

"Q. After Matt was at the Benien car, what did he do?

"A. That was the Benien Jeep. I differentiate the two vehicles real easily. He went back to his vehicle again and got into the trunk, which was not latched, lifted up the trunk, again looking around, reached under the lip of the trunk, and at that time he closed the lid of the trunk and latched it and walked to the car which we knew to belong to Willie Fairchild, which was also parked in the lot.

"After short conversation, the Defendant, Mr. Fahy, got into the Fairchild vehicle.

"* * *"

It must be noted that at no point did the testifying officer state he saw, prior to the arrest, drugs, packets, containers or anything change hands or even anything in the defendant's hands. His conclusion that drug-related activity was afoot was based solely upon the past reputation of the participants and upon the behavior of the defendant in opening and closing the trunk of his automobile. The reaching under the lid of the trunk was not sufficient evidence to warrant an inference as to the concealment of drugs. That the defendant looked around him at the time is likewise subject to many innocent interpretations. In the absence of action indicating the possession of drugs or at least a container for drugs, there is no reasonable inference that drugs were involved under these conditions. There was no informer to state that a drug sale was about to take place; there was no testimony that drugs were seen or that any transfer of anything occurred.

The general principle involved is well stated in the first paragraph of the syllabus of *State* v. *Bobo* (1988), 37 Ohio St. 3d 177, 524 N.E. 2d 489:

"The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances."

Although, on its face, that case bears some resemblance to the present case, there are significant and determinative differences:

1. There was in *Bobo* an ar-

ticulable reason to believe Bobo had a weapon in the car. Here no such fear is articulated, nor are grounds for such a belief apparent.

2. There was in *Bobo* testimony that the area involved was a "high crime area." Here no such evidence appears, and in any event the officer in *Bobo* was concerned with a weapon search.

3. In *Bobo, supra,* there was evidence of furtive action interpreted as the hiding of a gun. Here the action observed was "furtive" only in the eye of the beholder and could not objectively be so characterized, and there was no testimony as to an officer's experience of recovering weapons or drugs when an individual would make the type of movement made by Bobo in checking under his seat.

Here we conclude the totality of circumstances does not cumulate into articulable suspicion sufficient to justify a stop and search of the appellant.

We conclude that the subjective certainty of the officer that "we had witnessed drug activity there, being undertaken," was not sufficient to constitute probable cause for the search and arrest that followed. The articulable objective facts were not adequate to support that subjective conclusion.

The state asserts that the standards for application of the exclusionary rule have been broadened and cites *State* v. *Day* (1984), 19 Ohio App. 3d 252, 19 OBR 405, 483 N.E. 2d 1195. That case, however, is also concerned with a stop and frisk situation governed by *Terry* v. *Ohio* (1968), 392 U.S. 1. In *Day, supra,* there was information available to the arresting officer that the defendant was carrying a gun. There was a gun and the defendant was charged with carrying a concealed weapon. This is not analogous to the present case where there was no state-ment by anyone that the defendant possessed drugs, nor any admission by him to that effect, nor any drugs seen prior to arrest.

The observed actions of the defendant were subject to many innocent interpretations and warranted no reasonable inference as to the presence of drugs.

We conclude that the assignment of error is well-taken.

The judgment of the trial court is reversed and this court, doing that which the trial court should have done, grants the appellant's motion to suppress and remands this cause to the trial court for further proceedings.

*Judgment reversed*
*and cause remanded.*

MILLER, P.J., and EVANS, J., concur.