JOURNAL ENTRY AND OPINION
{¶ 1} Melvin Davis, defendant-appellant, appeals the trial court's partial denial of his motion to suppress. For the reasons set forth below, we affirm.
 {¶ 2} Appellant was indicted by a Cuyahoga County Grand Jury of drug trafficking, drug possession, possession of criminal tools and having a weapon while under disability. He filed a motion to suppress. After a hearing on the motion, the court granted the motion in part and denied the motion in part. Specifically, the court granted the motion as to the search warrant relative to appellant's house, all items confiscated therefrom and oral statements made by appellant during execution of the search. The court denied the motion as to evidence confiscated from appellant's two vehicles and his arrest. Appellant pled no contest to the charges and was sentenced to a three-year prison term.
 {¶ 3} At the suppression hearing, Detective Darryl Johnson of the Cleveland police department testified that on September 17, 2004, members of his vice unit planned to execute a search warrant for drugs at appellant's home located at 1921 Woodlawn Avenue in Cleveland. Appellant and his house had been subjects of a police drug investigation during August and September 2004.
 {¶ 4} Prior to the execution of the warrant, the detective set up surveillance of the premises, beginning sometime between 7:30 p.m. and 7:45 p.m. He testified that he had a clear and unobstructed view of the house and used binoculars during the course of the surveillance. Detective Johnson described that a side door is on the right of the house, if standing facing the front of the house. A parking lot is located immediately to the right of appellant's house and to the left there is a yard and a driveway.
 {¶ 5} The detective testified that while conducting the surveillance, he observed some individuals go up to the house; they left, however, without getting a response from anyone who may have been in the house. Shortly thereafter, a white Cadillac, driven by appellant, pulled into the parking lot. Appellant then had a brief conversation with an individual who was standing in the parking lot. After the conversation, appellant went to another vehicle, a Saturn, which was parked to the left of the house. The detective testified that appellant opened the driver's side door, closed it, went to the trunk, reached into it, retrieved a brown paper bag, closed the trunk and walked back to the parking lot, where he met up with the other individual, who had been waiting there. The two entered appellant's house through the side door.
 {¶ 6} Approximately 15 minutes later, appellant and the male exited the house and each left in their respective cars, appellant leaving in the white Cadillac. Detective Johnson notified the other members of his unit of the direction in which appellant was traveling.
 {¶ 7} Detective David Sims was one of the law enforcement officials who was alerted to the direction appellant was traveling when he left his house. He observed a car matching the description of appellant's car[1] in the area appellant was seen traveling, and as he drove his car past appellant's, he observed appellant drinking what appeared to be beer from a glass. The detective explained that he believed it to be beer because he could see foam at the top of the glass. He immediately told the other detectives who were with him that appellant was drinking beer. Sims explained that although it was nighttime, the area was well-lit and he was able to see appellant.
 {¶ 8} Detective Sims made a u-turn and radioed for assistance. While appellant was stopped at a traffic light, Sims approached the driver's side of his car, and another detective who was with him, Morris Vowell, approached the passenger's side. Sims identified himself as police. He informed appellant that they were stopping him for open container. When asked, appellant responded that his name was "Melvin." Appellant exited the car.
 {¶ 9} Vowell told Sims that "the beer [is] right here" and "he's got some dope on the front seat."[2] Sims patted down appellant, handcuffed him, advised him of his Miranda rights and informed him that he was under arrest for open container and violation of state drug law. Sims testified that he looked into the car and saw a scale, sandwich bags and drugs. Photos taken at the scene showed a can of Colt 45 beer in one cup holder, a glass of beer in the other cup holder, and a box of baggies and a scale on the front passenger seat.
 {¶ 10} Prior to the suppression hearing, Sims went to the lot where the car was impounded and verified that the glass was still in the car. A member of the Special Investigations Unit analyzed the glass; no prints were obtained.
 {¶ 11} Vowell, who as previously mentioned, had been in the car with Detective Sims, also testified at the suppression hearing. Vowell testified that he had previously seen appellant's Cadillac and that on the evening in question when he and Sims were informed of the direction appellant was traveling, he recognized the car when Sims drove past it.
 {¶ 12} Vowell testified that after appellant was stopped, he shined a flashlight inside the car and saw a can of Colt 45 beer and a glass of beer in the cupholders. The detective also saw a scale and a box of sandwich bags. After shining his flashlight across the box, he saw rocks of suspected crack cocaine in a sandwich bag in the box of baggies.
 {¶ 13} Meanwhile, Detective Johnson met with other law enforcement officials in preparation for executing the warrant and related to them what he had observed at appellant's house. The warrant had not been executed yet because they were waiting for SWAT members.
 {¶ 14} While executing the warrant, Johnson learned that a canine dog had sniffed appellant's Saturn and alerted.[3]
 {¶ 15} Johnson spoke with appellant and after that conversation officers were able to enter the locked Saturn. The officers recovered a loaded .9mm semiautomatic weapon from the trunk.
 {¶ 16} Appellant presented a defense. Appellant's friend, Susie Morrissette, testified that during "the first couple of weeks of August" of 2004, appellant was in Alabama, which is where she lives. Morrissette said that she thought appellant left "around the end of the month." She described appellant as driving an "ivory pearl color Cadillac," with a top of the same color. She further testified to seeing appellant in Alabama in the beginning of September 2004, and that he left sometime after September 14.
 {¶ 17} Morrissette testified that during that period of time when appellant was in Alabama, the two of them would sometimes spend the night at a motel, the reservation for which was registered under her name. She identified defense Exhibit K as a picture of a Cadillac belonging to Lloyd Davis, appellant's brother, and testified that she had never seen appellant driving it.[4]
 {¶ 18} Appellant testified that at the time of his arrest, he was driving his brother's pearl white Cadillac with a black top and tinted windows. He explained that he owns a pearl white Cadillac, but with a white top. Appellant testified that he drove his Cadillac, with the white top, to Alabama, and that he arrived there the first of August, stayed until September 14 and arrived back in Cleveland on September 15. Appellant testified that a man, also by the name of Melvin, resided at his house during the relevant time period.
 {¶ 19} Appellant denied meeting a man outside his house and going to and/or retrieving anything from the trunk of the Saturn, as described by Detective Johnson. Appellant testified that he went to his house that evening to get his asthma medication and was on his way to his sister's house when the police stopped him. He explained that he was driving Lloyd's car at the time, because earlier in the day, Lloyd had brought it to appellant's house to have it cleaned, and left in appellant's Cadillac. He testified that the can of beer was in the cup holder when he got into the car, and he denied drinking beer while driving. He denied that there was anything else in the car or on the passenger seat.
 {¶ 20} Appellant testified to being stopped by the police, describing them as "pulling" him out of the car, taking him to the back of the car, handcuffing him, then searching the car. He denied that the police said anything to him during this time, including advising him of hisMiranda rights. Appellant testified that it was not until he was in jail and a ticket was brought to him that he learned why he had been stopped.
 {¶ 21} Appellant admitted that the Cadillac he was driving that evening was registered in his name. He maintained, however, that it belonged to Lloyd, and explained that Lloyd and his girlfriend had stopped making payments on the car, and Lloyd did not have insurance or a license, so the car had to be put in his name.
 {¶ 22} Ricky Ramel Williams, appellant's neighbor, testified that he would see a white Cadillac with a black top and tinted windows parked on appellant's property. Although not sure, Williams believed appellant owned the Cadillac. Williams would occasionally see Lloyd drive the car; appellant even let Williams drive it.
 {¶ 23} The State called Detective Sims on rebuttal. He testified that after seeing defense Exhibit K, he went to the lot where the Cadillac that appellant was driving at the time of his arrest was impounded to look at the car. Sims testified that the windows were not tinted.
 {¶ 24} As previously mentioned, the trial court granted appellant's motion to suppress as it related to the search of the home, finding that the affidavit in support of the search warrant was insufficient. Accordingly, evidence seized from the home and statements made by appellant during the course of the search were suppressed. The court, however, denied the motion as it related to the search of the Cadillac and the Saturn. In regard to the Cadillac, the court found "the testimony of the police entirely credible, and that of the defendant not believable." Thus, the court found that the police were justified in stopping appellant for open container, and the drugs and paraphernalia were in plain view.
 {¶ 25} In regard to the Saturn, the court found that the police's testimony about appellant's activity at the Saturn, along with the dog's alert to the car, gave them probable cause to search it. The court also relied on the automobile exception as justification for the search.
 {¶ 26} The Ohio Supreme Court enunciated the standard of review of a motion to suppress in State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, 797 N.E.2d 71, as follows:
 {¶ 27} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.
 {¶ 28} "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. (Citations omitted.)"
 {¶ 29} In his first and sixth assignments of error, appellant challenges the stop. In his first assignment of error, he argues that the only motive the police had for stopping him was to take him back to his residence so that they could execute the search warrant, and thus, the search of the Cadillac was invalid. In his sixth assignment of error, appellant maintains that the trial court's finding that he was legitimately stopped for a traffic violation was not supported by competent, credible evidence.
 {¶ 30} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures, including unreasonable automobile stops.Whren v. United States (1996), 517 U.S. 806, 810, 116 S.Ct. 1769,135 L.Ed.2d 89; Dayton v. Erickson, 76 Ohio St.3d 3, 11, 1996-Ohio-431,665 N.E.2d 1091. "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren at 810. The Supreme of Court of Ohio has expressly held that "[w]here a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution." Erickson at the syllabus.
 {¶ 31} Detective Sims testified that as he drove his car past appellant's car, he observed appellant drinking what appeared to be beer from a glass. The detective explained that he believed it to be beer because he could see foam at the top of the glass. He immediately told the other detectives who were with him that appellant was drinking beer. Sims explained that although it was nighttime, the area was well-lit and he was able to see appellant. The trial court found Sims' testimony "entirely credible." We decline to second-guess the trier of fact on the issue of credibility of witnesses and are hence constrained to accept the trial court's findings absent overwhelming evidence to the contrary. Based upon the record before us, Sims' testimony gave the police probable cause to stop appellant.
 {¶ 32} Moreover, notwithstanding the fact that appellant denied that he had been drinking and driving, after making the stop, the police observed, in plain view, a can of beer and a glass in the cupholders. The trial court found the police's testimony, and not that of appellant, to be credible. We find the trial court's finding to be supported by competent, credible evidence.
 {¶ 33} Accordingly, appellant's first and sixth assignments of error are overruled.
 {¶ 34} In his second assignment of error, appellant argues that the trial court erred by not finding that the search of his vehicles was outside the scope of the search warrant for his house. In his third assignment of error, appellant argues that the trial court's finding that the items seized from the Cadillac were in plain view was erroneous.
 {¶ 35} In regard to the items recovered from the Cadillac, the trial court found that "[t]he police testified that, upon merely shining a flashlight into the car, they were able to see, in plain view on the front passenger seat, a box of plastic bags, with a bag of crack cocaine inside, and a scale." (Emphasis added.) The police never claimed that the search of the Cadillac was done in accordance with the search warrant for appellant's house. The trial court, therefore, properly analyzed the seizure of the items recovered from the Cadillac under the plain view doctrine.
 {¶ 36} It is well established that an incriminating object that comes into plain view during a lawful intrusion may be seized without a warrant. The plain view exception to the Fourth Amendment warrant requirement permits a law enforcement officer to seize what is clearly incriminating evidence or contraband when it is discovered in a place where the officer has a right to be. Coolidge v. New Hampshire (1971),403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed. 2d 564; see, also, State v.Williams (1978), 55 Ohio St.2d 82, 377 N.E.2d 1013, paragraph one of the syllabus. Thus, in order for the plain view doctrine to apply to permit a warrantless seizure, the law enforcement officer must not only be located in a place where the officer has a right to be, but the officer must also have lawful right or access to the object in plain view. SeeHorton v. California (1990), 496 U.S. 128, 110 S. Ct. 2301,110 L. Ed. 2d 112; see, also, State v. Waddy (1992), 63 Ohio St.3d 424, 442,588 N.E.2d 819.
 {¶ 37} Both Vowell and Sims testified to seeing the items in plain view on the passenger seat of the Cadillac. Vowell told Sims that "the beer [is] right here" and "he's got some dope on the front seat." Vowell explained that he shined a flashlight inside the car and saw a scale and a box of sandwich bags. After shining his flashlight across the box, he saw rocks of suspected crack cocaine in a sandwich bag in the box of baggies. Similarly, Sims testified that he looked into the car and saw a scale, sandwich bags and drugs. Photos taken at the scene showed a box of baggies and a scale on the front passenger seat.
 {¶ 38} Upon review, we find this testimony to be competent and credible that the items seized from the Cadillac were in plain view. Moreover, as already discussed, the stop of appellant was lawful. Thus, the officers' discovery, in plain view, of the items seized from the Cadillac was legal.
 {¶ 39} Similarly, the search of the Saturn was legal. The testimony from the law enforcement officials relative to the Saturn was that, earlier in the day, they observed appellant and another individual engaged in a conversation in the parking lot adjacent to appellant's house. After the conversation, appellant went to the Saturn, which was parked to the left of the house. The detective testified that appellant opened the driver's side door, closed it, went to the trunk, reached into it, retrieved a brown paper bag, closed the trunk and walked back to the parking lot, where he met up with the other individual, who had been waiting there. The two entered appellant's house through the side door. Approximately 15 minutes later, appellant and the male exited the house and each left in their respective cars.
 {¶ 40} The defense stipulated at the hearing that a trained canine dog alerted to the trunk of the Saturn, indicating an odor of narcotics. The trial court found that, based upon the testimony and stipulation, the police had probable cause to search the trunk. We agree. "Once a narcotics trained dog alerts to the presence of contraband, probable cause exists for a further search of the vehicle." State v. Keller (Jan. 14, 2000), Montgomery App. No. 17896.
 {¶ 41} Accordingly, because we find that the police legally discovered the items in the Cadillac pursuant to the plain view doctrine and had probable cause to search the Saturn, we overrule appellant's second and third assignments of error.
 {¶ 42} In his fourth assignment of error, appellant argues that the trial court's finding of probable cause was erroneous. Specifically, appellant argues about the legitimacy of the traffic stop. Although we have already discussed the propriety of the stop, we consider this assignment of error to address the two cases which appellant relies upon, and which are distinguishable from this case.
 {¶ 43} In State v. Fahey (1988), 49 Ohio App.3d 160, 551 N.E.2d 1311, the police set up surveillance of a parking lot that was a popular gathering spot for young people. They observed certain actions, persons and events which caused them to believe an offense was in progress. After observing these events, the police saw the defendant enter a car and start to leave, at which point they stopped him. The defendant was asked to exit the vehicle and searched, whereupon suspected drugs were found.
 {¶ 44} At the suppression hearing, the State argued that reports of unusual activity in the area, the defendant's reputation for drug involvement and his association with drug dealers constituted probable cause. The Third Appellate District disagreed, finding that "the observed actions of the defendant were subject to many innocent interpretations and warranted no reasonable inference as to the presence of drugs." Id. at 163. In other words, the police may not search persons based solely on their reputation as drug dealers and their ambiguous movements at the trunk of a car. Similarly, mere association and conversation with known drug users are not enough to warrant an inference of current drug activity.
 {¶ 45} In State v. Fincher (1991), 76 Ohio App.3d 721, the police saw the defendant approach a stopped vehicle in an area known for drug activity. When the defendant saw the police cruiser, he quickly turned and walked away from the vehicle he had been approaching. The police pursued him, and he dropped a pill bottle with suspected crack cocaine. A crack pipe with suspected residue was recovered during a subsequent search of the defendant. On appeal, this court reversed the defendant's conviction, holding that his approach of the stopped vehicle and subsequent retreat were not sufficient activity to justify an investigative stop, even in an area known for drug activity. Id. at 726.
 {¶ 46} In this case, unlike in Fahey and Fincher, the police testified that, although they had previously seen appellant meeting with an individual and going into the trunk of his Saturn, he was stopped because he was driving while drinking. Thus, appellant was stopped for a valid traffic violation.
 {¶ 47} Accordingly, appellant's fourth assignment of error is overruled.
 {¶ 48} In his fifth assignment of error, appellant contends that the trial court erred by not finding that his arrest was unconstitutional. Within this assignment, appellant raises several different issues, including the stop and seizure of items in the Cadillac, which have already been discussed. We therefore only consider the propriety of his warrantless arrest.
 {¶ 49} R.C. 2935.03 governs warrantless arrests and provides as follows:
 {¶ 50} "When there is reasonable ground to believe that * * * a felony drug abuse offense as defined in section 2925.01 of the Revised Code has been committed within the limits of the political subdivision * * * in which the peace officer is appointed, employed, or elected * * * a peace officer * * * may arrest and detain until a warrant can be obtained any person who the peace officer has reasonable cause to believe is guilty of the violation."
 {¶ 51} The evidence in this case demonstrated that the police stopped appellant because they saw him drinking what they believed to be beer while driving. During the stop, they saw, in plain view, a can of beer and a glass in the cupholders and sandwich bags, drugs and a scale on the front passenger seat. A warrantless arrest of an individual in a public place for a felony or misdemeanor committed in the officer's presence is consistent with the Fourth Amendment if the arrest is supported by probable cause. Maryland v. Pringle (2003), 540 U.S. 366,124 S.Ct. 795, 157 L.Ed.2d 769. Based upon the testimony and evidence, we find that the police had reasonable cause to believe appellant had violated both laws and, therefore, legally arrested him.
 {¶ 52} Accordingly, appellant's fifth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, P.J., and ANTHONY O. CALABRESE, JR., J., CONCUR
[1] Sims described the car as a light colored Cadillac with four doors that did not have tinted windows and testified that it was the only Cadillac in the vicinity.
[2] Defense counsel objected to this testimony on direct examination; however, the same testimony was offered during cross-examination.
[3] A stipulation was placed on the record that a trained narcotics dog alerted to the trunk of appellant's Saturn on the evening in question.
[4] The defense photo depicts a white Cadillac with a black top. Although the photo was taken at a distance from the car, the car does not appear to have tinted windows, or at least not tinted to the point that it would be impossible to see through them. State's Exhibit 14c depicts a white Cadillac with a black top. Sims testified that the car in that exhibit is the car appellant was driving when stopped.