OPINION
{¶ 1} Defendant-appellant Ronald Cooper appeals from his conviction and sentence, following a no-contest plea, to one count of Possession of Crack Cocaine. He contends that the trial court erred when it overruled his motion to suppress evidence that he contended was obtained as the result of an unlawful search and seizure. We *Page 2 
conclude that the trial court did not err in overruling the motion to suppress. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 2} Dayton police officer Matthew S. Heiser was patrolling an area of Dayton in his marked cruiser at about 10:00 at night on January 10, 2007, in an area to which he had been assigned for the previous six years. He knew that prostitution and narcotics were "pretty much common" in this area, having made from 50 to 60 arrests for drugs and for prostitution offenses in the past.
 {¶ 3} Heiser saw Cooper stop his car at a corner and begin talking with a woman whom Heiser knew to be a prostitute. Heiser knew this woman to be a prostitute because he had "seen her out on the streets before flagging cars down, being picked up by cars." Cooper talked to the woman for a minute to a minute and a half, according to Heiser's trial testimony — for forty-five seconds, according to Heiser's police report. Heiser decided to stop Cooper to investigate. It is unclear from Heiser's testimony whether Cooper and the woman had completed their conversation when Heiser effectuated the stop.
 {¶ 4} Heiser turned on his overhead lights, "and the car pulled over onto Five Oaks at Main Street."[1] What happened thereafter is described in Heiser's testimony as *Page 3 
follows:
 {¶ 5} "Q. And tell us then what happened, sir.
 {¶ 6} "A. I approached the driver's side, noticed the driver drinking a Colt 45 beer.
 {¶ 7} "Q. And what if any local code or ordinance does this violate?
 {¶ 8} "A. The open container in a motor vehicle.
 {¶ 9} "* * * *
 {¶ 10} "Q. And what then happened after you observed the driver drinking the can of beer?
 {¶ 11} "A. I asked him to — if he'd mind stepping out of the car. He complied. Brought him back to my cruiser. He immediately started reaching for his coat pocket.
 {¶ 12} "* * * *
 {¶ 13} "Q. You mentioned that you then observed something. I interrupted you. Why don't you tell us what if anything you observed.
 {¶ 14} "A. He kept reaching for his coat pocket.
 {¶ 15} "* * * *
 {¶ 16} "A. Okay. When you say he was reaching for something, describe that for us if you would.
 {¶ 17} "A. I was asking him if he had any weapons and he immediately started to try to get his hands into his pockets.
 {¶ 18} "Q. And what if any concern was that to you when you're observing this?
 {¶ 19} "A. Because I did not want him to pull out a gun, knife, anything to injure me. *Page 4 
 {¶ 20} "* * * *
 {¶ 21} "Q. All right. So this is on the corner you're able to observe this. What if anything do you say to the defendant as he is reaching into his pockets?
 {¶ 22} "A. I asked him to stop reaching into his pockets. Asked him if he has any weapons. Began patting his outer garments down for weapons.
 {¶ 23} "Q. And what if anything then happened?
 {¶ 24} "A. Then I could feel a small, what seemed to be crack cocaine rock in his jacket pocket from experience.
 {¶ 25} "Q. And then what happened?
 {¶ 26} "A. He tried to get into his pocket again. So I took the item out of his pocket and then placed him in handcuffs.
 {¶ 27} "* * * *
 {¶ 28} "Q. So you take this item out of the defendant's pocket after you pat him down and feel it; is that correct?
 {¶ 29} "A. Correct.
 {¶ 30} "Q. Can you describe for us the size of the item that you felt in the pocket?
 {¶ 31} "A. It — small little rock-like.
 {¶ 32} "Q. Rock-like substance?
 {¶ 33} "A. Correct.
 {¶ 34} "* * * *
 {¶ 35} "Q. And you indicate that this appeared to you to be a small rock-like substance, it appeared to be crack cocaine. Have you seen crack cocaine before? *Page 5 
 {¶ 36} "A. Yes.
 {¶ 37} "Q. And where did you first see it?
 {¶ 38} "A. On the streets of Dayton.
 {¶ 39} "Q. All right. And have you in the past seized items that you believed to be crack cocaine?
 {¶ 40} "A. Yes.
 {¶ 41} "Q. And did they appear to have the same consistency in terms of the structure that you observed in the defendant's pocket?
 {¶ 42} "A. Yes.
 {¶ 43} "Q. As a result of that, when you patted the defendant's pocket, what did you presume it to be?
 {¶ 44} "A. Crack cocaine."
 {¶ 45} On cross-examination:
 {¶ 46} "Q. It's your testimony today that you noticed that there was a rock-like substance — I think the prosecutor used the word `substance,' but for — for argument sake, you noticed a rock-like substance in the pocket.
 {¶ 47} "A. Correct.
 {¶ 48} "Q. Okay. It's your testimony today that you recognized that substance as being crack cocaine.
 {¶ 49} "A. Correct.
 {¶ 50} "Q. And that because of that, you went to pull it out of the pocket.
 {¶ 51} "A. Correct."
 {¶ 52} The object taken from Cooper's pocket was field-tested by the cobalt *Page 6 
reagent test, and tested positive for cocaine. Cooper was arrested and charged by indictment with Possession of Crack Cocaine. He moved to suppress the evidence-including a question he put to Heiser, spontaneously, concerning how much trouble he was going to be in as a result of the crack cocaine recovered on his person — contending that it was obtained as the result of an unlawful search and seizure. Following the hearing on the motion, the trial court overruled the motion to suppress the evidence.
 {¶ 53} Thereafter, Cooper pled no contest, was found guilty, and was sentenced accordingly. From his conviction and sentence, Cooper appeals.
 II {¶ 54} Cooper's sole assignment of error is as follows:
 {¶ 55} "THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION TO SUPPRESS AS THERE WERE NO LEGAL GROUNDS TO STOP DEFENDANT'S CAR, CONDUCT A TERRY PAT-DOWN, OR SEARCH THE DEFENDANT'S POCKETS."
 {¶ 56} Cooper first attacks the validity of the stop. The trial court, in its decision, found the initial encounter, before the discovery of the open container of beer, to have been consensual, but we find no support for that conclusion in the record. The only witness is Heiser, and he clearly testified that he turned on his overhead light and stopped Cooper, before seeing the open container, based upon the conversation Cooper had with the woman known by Heiser to have been a prostitute.
 {¶ 57} Cooper cites State v. Fahy (1988), 49 Ohio App. 3d 160, a decision of the Third District Court of Appeals, for the proposition that merely observing a suspect to be *Page 7 
conversing with a known criminal, without knowing the content of the conversation, is insufficient to justify an investigatory stop. That opinion admits of some ambiguity. In framing the issue, the court of appeals said: "The issue then centers upon whether the preceding events constituted probable cause both for the search and for the subsequent arrest without reference to that evidence discovered by the search." Id., at 161. The officers had stopped a car, asked the occupants to exit the car, and then searched each one of the occupants. Id., at 160. The officers' basis for the search of the occupants was a conversation with a known drug offender. The court of appeals reasoned: "These facts alone are insufficient to constitute any form of probable cause." Id., at 161, citing Sibron v. New York (1968), 392 U.S. 40. Sibron involved a search incident to an arrest, where there was no probable cause for the arrest. The court of appeals in State v. Fahy, supra, at 163, went on to state: "Here we conclude the totality of the circumstances does not cumulate into articulable suspicion sufficient to justify a stop and search of the appellant."
 {¶ 58} Although the Third District Court of Appeals, in Fahy, used the "articulable suspicion" language at one point, we conclude that what the court was really concerned about in that case was whether there was probable cause to search the defendant, not merely to stop him. We agree that a suspect's mere conversation with a known criminal, without knowing the content of the conversation, is not sufficient probable cause to justify
 {¶ 59} either a search or an arrest, both of which, involving greater intrusion upon the suspect's liberty interest than a brief, investigative stop, require a greater degree of suspicion to justify that intrusion. *Page 8 
 {¶ 60} In the case before us, Cooper was seen in his car, stopped at a corner with a reputation for prostitution, at 10:00 at night, talking to a woman outside his car who was a known prostitute. While we agree that this circumstance, by itself, would not have justified either Cooper's arrest, or a search, we conclude that it constituted a basis for a reasonable, articulable suspicion justifying a brief investigative stop.
 {¶ 61} The stop put Heiser into a position to observe an actual violation of Dayton's open-container ordinance, which justified his asking Cooper to step out of his car.
 {¶ 62} When Cooper, upon being asked whether he had any weapons, began putting his hands in his coat pockets, at 10:00 at night in an area known for narcotics and prostitution, we conclude that it was reasonable for Heiser to perform a limited pat-down search for weapons to insure his safety. The officer "need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man under the circumstances would be warranted in the belief that his safety or that of others was in danger." State v. Smith (1978), 56 Ohio St.2d 405,407, 384 N.E.2d 280.
 {¶ 63} Heiser, who testified that he had experience with crack cocaine, testified that as he patted Cooper down, he recognized a small, rock-like object in Cooper's coat pocket as being crack cocaine. Because the pat-down search for weapons was justified, Heiser's recognition of contraband during the search, based upon his sense of touch, permitted him to retrieve the object from Cooper's pocket under the "plain feel" doctrine established in Minnesota v. Dickerson (1993), 508 U.S. 366, 113 S.Ct. 2130, 124 L.E.2d 334. "Probable cause to associate an object with criminal activity does not demand certainty in the minds of police, but instead merely requires that there be a `fair *Page 9 
probability' that the object they feel is illegal contraband or evidence of a crime." State v. Thompson (1999), 134 Ohio App.3d 1,4,729 N.E.2d 1268. Based upon Heiser's testimony, we conclude that the trial court could reasonably find, as it did, that when Heiser retrieved the object from Cooper's coat pocket, Heiser could reasonably conclude that it was highly probable, even if not certain, that the object was crack cocaine.
 {¶ 64} Cooper's sole assignment of error is overruled.
 III {¶ 65} Cooper's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
WOLFF, P.J., and BROGAN, J., concur.
Copies mailed to:
Mathias H. Heck, Jr. R. Lynn Nothstine Andrea Oladi Hon. Gregory F. Singer
[1] One might infer from this testimony that Cooper had finished his conversation with the woman and had at least started to drive away when Heiser stopped him. An equally plausible inference is that when Heiser turned on his overhead light, Cooper was still stopped at the corner, but pulled over to a suitable area to comply with the stop and get out of traffic. We conclude that the difference in these two situations is immaterial. *Page 1